Elizabeth J. Spry and Frank Jager, Appellees, v. Chicago Railway Equipment Company, Appellant.

Gen. No. 39,796.

Opinion
filed February 1, 1939.

Musgrave, Oppenheim, Price & Ewins, of Chicago, for appellant.

Harris F. Williams and Robert C. Baumgartner, both of Chicago, for appellees.

Mr. Justice Hebel delivered the opinion of the court.

The defendant appeals from a judgment entered by the court for $5,025.69, which was entered in a proceeding instituted by the plaintiff to recover certain sums claimed to be due under a contract. The defendant filed its answer, admitting part of the sums claimed to be due, and denying liability as to the remainder.

After partial judgment had been entered and satisfied, the plaintiffs filed their motion for a summary judgment. The court heard the motion on the pleadings, affidavits and other papers submitted by the parties and rendered judgment against the defendant, from which the defendant appeals.

The plaintiff's complaint sets up a contract, dated December 30, 1929, between the plaintiffs and the defendant, which recites that the plaintiffs were assignees of certain letters patent for improvements in railway car door construction, and the defendant was desirous of obtaining the right to manufacture and sell the inventions and improvements covered thereby. The invention covered by these letters patent was a certain ball-bearing car door hanger. In the contract the defendant is granted the exclusive right to make, manufacture and sell the articles covered by the patent. It agrees to pay $3,000 to the plaintiffs within 10 days after the agreement is executed, and further agrees to pay quarterly a royalty of 50 cents per car set for each set sold. A minimum royalty of $1,500 per year is provided, the payment of any deficiency in the minimum royalty to be made 60 days after the close of each calendar year.

Section eight of the contract provides that the plaintiffs shall pay one-half of the cost of defending either of the parties to the contract, or such other parties as shall be sued in any suits for patent infringement arising out of or incidental to the practice and use by the defendant of the inventions covered by the agreement, and permits the defendant in its discretion to institute infringement suits. It further permits the defendant to retain one-half of the royalties payable to the plaintiffs to defray the expenses of litigation.

The complaint further states that $3,000 was duly paid upon the execution of the contract, and also royalties for the years 1930 and 1931. The plaintiffs claim as

due and unpaid $1,500 for each of the years 1932, 1933, 1934 and 1935, and asked judgment for the aggregate amount of said sums, with interest thereon from the dates the respective sums became due.

The defendant filed its answer, admitting the contract and that payments had been made as set forth in the complaint. It admitted that $1,766.79 was due the plaintiffs under their contract with the defendant, and stated that this sum had been tendered to them by it. It disclaimed liability for the further sum of $4,233.21, demanded by the plaintiffs, this sum having been retained by the defendant pursuant to section 8 of the contract sued upon, wherein the plaintiffs had agreed "to pay one-half the cost of defending either of the parties hereto, or such other parties as shall be sued in any suits for patent infringements arising out of or incidental to the practice and use by the party of the second part of the inventions covered by this agreement. . . ." The defendant further alleges that a certain suit in equity for patent infringement entitled, "Camel Company v. Chicago Railway Equipment Company," instituted in the District Court of the United States, was a suit within the purview of said section of the contract; that it had expended $8,466.41 in defense of the suit, and under the terms of the contract, had retained the balance of royalties earned under plaintiffs' contract with the defendant, in the sum of $4,233.21 as plaintiffs' contribution to the expense of defending the infringement suit.

The defendant in this action contends that in construing the contract sued upon the court will determine the intent of the parties from the terms of the instrument when read in connection with the facts and circumstances surrounding the parties at the time of its execution. In particular, it must construe section 8 of the contract and determine what suits are included within the scope of its language, and in order that we

may have this section properly before us, it will be well to quote it literally.

"Eighth: The parties of the first part agree to pay one-half the cost of defending either of the parties hereto, or such other parties as shall be sued in any suits for patent infringements, arising out of or incident to the practice and use by the party of the second part of the inventions covered by this agreement, and also agree, in the discretion of the party of the second part, to pay one-half the cost of prosecuting suits or actions against any person or persons who may infringe or jeopardize said letters patent, or any of them, or any improvements thereof, as covered by this agreement. It is understood that the party of the second part may retain, for such litigation purposes, one-half of the royalties due after the institution of any such suit, and that the party of the first part shall not be liable for litigation expenses in excess of the amount so retained. In the event of purchase option being exercised in accordance with paragraph eleventh hereof, any such fund which shall have accrued to be released."

The answer of the plaintiff to this contention is that the contract in question is clear and unambiguous and does not require construction. Under the contract plaintiffs agreed to pay one-half the cost of defending any patent infringement suits that might be brought against the defendant for using the door hanger, the invention involved. The Camel Company sued the defendant for an alleged infringement of a movable door jamb—a device having nothing to do with a door hanger. Consequently, the defendant had no right to charge the plaintiffs with one-half of those defense costs. The defendant's affidavit of merits and the supporting affidavits fail to show a sufficiently good and bona fide defense on the merits to entitle the defendant to defend the action.

Plaintiff also calls attention to the fact that the contract between the plaintiffs and the defendant, signed on December 30, 1929, and providing for plaintiffs to pay one-half the costs of infringement suits "arising" from the defendant's use of the door hanger, did not cover or include the Camel Company suit filed on March 27, 1929, some 9 months prior thereto.

The language that is pointed to as being ambiguous and uncertain is: "arising out of or incident to the practice and use by the party of the second part of the inventions covered by this agreement." In the discussion of whether the above quoted words are ambiguous and uncertain, it is necessary to consider the nature of the contract involved in the litigation. The contract was entered into between the parties in order that the defendant might obtain the exclusive right to manufacture and sell for commercial uses the inventions set forth and described in the letters patent issued by the United States and the Canadian Government, and the defendant is given the exclusive right by the plaintiffs to manufacture, sell and dispose of the articles covered by said inventions and the patents described in the contract. This statement is further amplified by the paragraph which we have quoted above, in which the plaintiff agrees "to pay one-half the cost of defending either of the parties hereto, or such other parties as shall be sued in any suits for patent infringements, arising out of or incident to the practice and use by the party of the second part of the inventions covered by this agreement."

This agreement, which is part of the contract, clearly indicates that according to the subject matter of the agreement the defendant has the right to use and sell the patented articles described therein. We have already indicated that the subject matter of this contract is the right to manufacture, sell and use the patented articles. This seems to be clear, not ambigu-

ous. The contract further provides that the plaintiff is to pay one-half the cost of defending either of the parties hereto if there is a suit or suits for patent infringement which may arise out of or incident to the practice and use by the party of the second part of the inventions covered by the agreement. This statement does not seem to be ambiguous. The contract is clearly for the purpose of giving the defendant the right to manufacture and sell the patented articles, and provides for the defense of suits for infringement that may be instituted against the defendant for the practice and use of the articles invented.

The Camel Company, a competitor of the defendant in the manufacture of car door units, manufactured and sold a car door unit embodying a movable door jamb. This door jamb competed on the market with the one sold by the defendant. The Camel Company instituted a patent infringement suit in the United States District Court, Chicago, charging that the movable door jamb construction embodied in defendant's car door unit infringed its patents on such construction. In fact, as it was afterwards decided in this infringement suit, the movable door jamb designed and built by the defendant, incorporated no patentable feature and infringed no patents.

The plaintiffs contend that the parties contemplated that the plaintiffs should contribute to the cost of defendant infringement suits charging infringement solely in the manufacture, sale and use of the door hanging device, but the defendant contends that had the parties intended defendant's right to be so limited the contract would simply have designated infringement suits "arising out of the manufacture and sale" of the articles covered by the inventions, instead of the broader more inclusive words, "incident to" in addition to the words, "arising out of." These words used in conjunction with the words "arising out of" must

be intended to enlarge the meaning of the former term. The only effect of both terms is to show an intent to cover any and all practices and uses made of these inventions by the defendant.

We are not inclined to follow this suggestion for the reason that the inventions covered by the agreement between the plaintiffs and the defendant refer to and cover a ball-bearing car door hanger. The movable door jamb had nothing to do with the door hanger, which is a wholly different device. It did not incorporate or claim any of the features of construction of the door hanger, and the answer of the defendant to the plaintiffs' written requests for admissions, is, in part, as follows:

"4. Said features of construction charged in said equity suit to be an infringement of Camel Company's patents are not disclosed or claimed in plaintiffs' patents under which defendant was licensed by said contract dated December 30, 1929.

"5. The charge of infringement in said equity suit was based upon a movable door jamb construction.

"6. None of plaintiffs' patents under which defendant was licensed by said contract of December 30, 1929, discloses or claims any movable door jamb construction."

The contract in question, as we construe it, permitted the defendant to use the ball-bearing car door hanger, and the practice and use by the party of the second part was to be determined by the defendant, and the use that was to be made of the door hanger did not enlarge the meaning to the extent that the plaintiffs should contribute for any infringement costs arising from its use or sale of a completed car door, and if by the practice and use by the defendant of this door hanger it infringed a patent which was issued to a third person in regard to the construction of a door, the matter would have to be determined by a suit in

which infringement is charged, and this of course would not make the plaintiffs liable because of the provision in the contract that they will contribute one-half the cost of defending the parties thereto. This is further emphasized by the words, ''arising out of or incident to the practice and use by the party of the second part of the inventions covered by this agreement.'' This limits the liability of the plaintiffs in an action of the character we have before us—an infringement that may arise out of the practice and use of the ball-bearing car door hanger.

The defendant contends that the court erred in sustaining plaintiffs' motion for a summary judgment. The Civil Practice Act provides for the entry of a summary judgment ''unless the defendant shall, by affidavit of merits filed prior to or at the time of the hearing on said motion, show that he has a sufficiently good defense on the merits to all or some part of the plaintiff's claim to entitle him to defend the action.'' (Section 57, Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 181; Jones Ill. Stats. Ann. 104.057].) As to what constitutes a good defense, this court stated in *Chicago Title & Trust Co. v. Cohen,* 284 Ill. App. 181: ''The primary purpose of section 57 of the Civil Practice Act is to enable the court to determine whether there is an issue of fact which should be tried. In *Dwan v. Massarene,* 192 N. Y. S. 577, the Appellate division of the Supreme Court, construing a similar section, said:

'' 'The defendant must show that he has a bona fide defense to the action, one which he may be able to establish. It must be a plausible ground of defense, something fairly arguable and of a substantial character. This he must show by affidavits or other proof.' ''

The trial court, of course, must determine from the affidavits filed whether the defendant has interposed a sufficiently good defense to entitle it to defend, but

where defendant's affidavits present no substantial triable issues of fact, the court will grant the motion for a summary judgment. Plaintiffs call to our attention that even the defendant concedes that its affidavits do not raise any triable issues, for it says: "This case, as here considered, does not present close issues of fact, raising triable issues for a jury."

We quite agree with that statement, for the sole question in this case is the construction by the court of the contract that was entered into by the parties, and the construction given was that the plaintiffs were not liable for costs entailed in the Camel lawsuit, and not being liable under paragraph 8, the court properly entered judgment for the amount due under the terms of the contract.

For the reasons stated in this opinion, we are of the opinion that the court properly entered judgment for $5,025.69, and it is affirmed.

*Judgment affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.