2022 IL App (1st) 210057-U

THIRD DIVISION
June 29, 2022

No. 1-21-0057

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| SHERRI BOURDAGE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2015 OP 76087 |
| | ) | |
| JOSEPH PEILA, | ) | Honorable |
| | ) | Thomas V. Cushing, |
| Respondent-Appellee. | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Gordon and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Appeal dismissed. Appeal from denial of motion to vacate plenary stalking no-contact order is moot, as order has long expired, and unconstitutional restriction on petitioner's speech could not be reimposed under statute now in effect, which was amended to remove language at issue on appeal.

¶ 2    Petitioner Sherri Bourdage appeals from the circuit court's denial of her section 2-1401 petition seeking to vacate a plenary stalking no-contact order issued against her at the request of respondent Joseph Peila. See 735 ILCS 5/2-1401 (West 2018). Among other restrictions, the order prohibited Bourdage from "communicat[ing] to or about" Peila. Bourdage claims the order is "void *ab initio*" because this speech restriction violates her first-amendment rights, for the

reasons we explained in *Flood v. Wilk*, 2019 IL App (1st) 172792. After Peila failed to file a response brief, we took the case on the appellant's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). We now dismiss the appeal as moot.

¶ 3 The events giving rise to this case began in 2010. Peila was the principal at Eliza Chappell Elementary School, a Chicago Public Schools (CPS) facility, where Bourdage's son had just enrolled. Bourdage grew disgruntled with Peila's management of the school and his alleged misrepresentations to her. They developed a contentious relationship, to say the least. Peila sought several emergency stalking no-contact orders against Bourdage, and eventually the plenary order at issue here.

¶ 4 In his pleadings, Peila alleged myriad instances of harassment, threats, and otherwise inappropriate conduct and speech by Bourdage over the years. These allegations included physically assaulting teachers and school security guards, threatening to attack Peila with a taser, filing false police reports, making sexual comments about children while present at the school, attempting to enter school premises after CPS barred her from doing so, and making all manner of allegedly false and defamatory statements about Peila to third parties.

¶ 5 The circuit court first entered the plenary order on November 15, 2016. The restrictions it imposed on Bourdage were set out in four clauses. Clause (b)(1) prohibited her from engaging in any "course of conduct" defined by statute as "stalking." See 740 ILCS 21/10 (West 2018). As the order set forth, that includes any acts through which Bourdage might "follow, monitor, observe, surveil, threaten, or *communicate to or about*, [Peila]," including by means of electronic communications. (Emphasis added.)

¶ 6 Clause (b)(2) prohibited Bourdage from "having any contact with" Peila. Clause (b)(3) prohibited Bourdage from knowingly coming within 100 feet of Bourdage's residence, the

2

school, or anywhere else Peila worked. Clause (b)(4) barred Bourdage from obtaining a FOID card.

¶ 7        The plenary order expired on November 15, 2018. On December 6, 2018, the court extended the plenary order to December 4, 2020. The restrictions in clauses (b)(1) through (b)(4) remained in effect, and clause (b)(5) was added, specifying that Bourdage shall have "no contact [with Peila] by any means including through third parties."

¶ 8        In January 2020, apparently, Bourdage filed a motion for relief from judgment under section 2-1401 of the Code of Civil Procedure, arguing that the no-contact order violated her first amendment rights. See 735 ILCS 5/2-1401 (West 2018). We say "apparently" because the section 2-1401 motion is not in the record on appeal.

¶ 9        The record does reflect, however, that the section 2-1401 motion was denied by the circuit court on July 16, 2020. Bourdage moved for reconsideration, and the court denied reconsideration on December 21, 2020. Bourdage then appealed both the denial of the section 2-1401 motion and the denial of the motion to reconsider.

¶ 10       In any event, the plenary order itself expired, by its own terms, on December 4, 2020.

¶ 11       On appeal, as in the circuit court, Bourdage challenges only a small portion of the language contained in clause (b)(1), specifically the language in the plenary order preventing her from "communicat[ing] to or about" Peila. She says that restriction is an unconstitutionally broad prior restraint on her speech. She relies principally on two decisions.

¶ 12       First, our supreme court found that identical language, insofar as it defined *criminal* stalking, to be facially unconstitutional. See *People v. Relerford*, 2017 IL 121094, ¶ 63 (finding portion of criminal stalking statute that made it unlawful to negligently "communicate[ ] to or about" a person, where the speaker knows or should know the communication would cause a

reasonable person to suffer emotional distress, to be facially unconstitutional). Second, we invalidated similar language in a civil no-contact order in *Flood*, 2019 IL App (1st) 172792, ¶¶ 24, 45-46 (invalidating, as overbroad restriction on First Amendment rights, a no-contact order restricting defendant from "communication in any form or any writing naming or regarding [petitioner]," his employees or any members of his church congregation).

¶ 13    But we first consider whether this appeal is moot.

¶ 14    An appeal is moot if it no longer presents an actual, justiciable controversy, such that a reviewing court can no longer grant effective relief to the complaining party. *In re Benny M.*, 2017 IL 120133, ¶ 17; *Lance H.*, 2014 IL 114899, ¶ 12. A reviewing court does not typically decide moot appeals. *Lance H.*, 2014 IL 114899, ¶ 12; *Peach v. McGovern*, 2019 IL 123156, ¶ 64. The court may raise the threshold question of mootness on its own motion (*Tirio v. Dalton*, 2019 IL App (2d) 181019, ¶ 21), including in a case taken on the appellant's brief only. See *McHenry Twp v. County of McHenry*, 2022 IL 127258, ¶¶ 47-49 (finding issue moot, though exception applied, in case taken under *Talandis*); *In re Custody of J.K.*, 2021 IL App (1st) 200062-U, ¶¶ 28-29 (same, minus the exception).

¶ 15    We find this appeal moot. For one thing, the plenary order Bourdage challenges expired on December 4, 2020, before Bourdage even filed her notice of appeal. Bourdage's brief on appeal makes no claim that she is suffering any present harm from the expired order. There is no claim, much less evidence in the record, that any subsequent stalking no-contact order with similar language has been entered against her.

¶ 16    Nor is it likely that the challenged language ever would appear again in such an order, because in response to our supreme court's decision in *Relerford*, the General Assembly eliminated that very language from the definition of civil "stalking" in 2018, a law that took

effect on January 1, 2019. Specifically, Public Act 100-1000 amended the civil stalking statute, deleting the language "communicates to or about" a person from the definition of "stalking." See Pub. Act. 100-1000, § 5 (eff. Jan. 1, 2019) (amending 740 ILCS 21/10). The senate sponsor noted that one of the purposes of the legislation was to "remove[] language[] from the stalking statute recently held unconstitutional by the Illinois Supreme Court." Tr., 100th Ill. Gen. Assembly, April 24, 2018, at 45 (statement of Sen. Raoul).

¶ 17    A circuit judge would thus have no statutory authority to include the "communicates to or about a person" language in any civil no-contact order going forward. As that is the only language Bourdage challenges on appeal, we can find no actionable controversy for us to redress.

¶ 18    True, there are exceptions to the mootness doctrine. See *In re Rob W.*, 2021 IL App (1st) 200149, ¶ 50 (listing recognized exceptions). But none are applicable here. We recognize an exception for controversies that are capable of repetition but evading review (see *id.*), but we have just explained that, in light of the legislature's elimination of the challenged language from the civil stalking law, this matter is extremely unlikely to recur.

¶ 19    Nor would this appeal fall under the exception for questions of substantial public importance, both because the question is unlikely to recur and because we can think of no reason to guide future courts and public officers on the constitutionality of language that has been legislatively eliminated. See *County of McHenry*, 2022 IL 127258, ¶ 50 (criteria for public interest exception are (1) public nature of question; (2) need for authoritative determination to guide public officers; and (3) likelihood that question will recur).

¶ 20    Finally, we see no reason to apply the collateral-consequences exception (see *In re Rita P.*, 2014 IL 115798, ¶ 31) for the simple reason that Bourdage challenges only one small portion of a much larger (and expired) no-contact order. As noted above, the plenary order contained

many other provisions that are not related to the challenged language, including prohibiting direct contact with Peila or coming within 100 feet of Peila's home, job, or school. Any ruling in Bourdage's favor would not impact the validity of those other provisions. Bourdage offers no reason in her brief why the entire, multi-part no-contact order should fall when only a minor portion of it is claimed to be unconstitutional, and we can think of none.

¶ 21    Thus, to the extent that there are collateral consequences to having a no-contact order imposed on her in the past—and she identifies none in her brief—nothing in this appeal, even if she succeeded, would change that fact. A victory in this appeal would not invalidate the vast majority of that no-contact order.

¶ 22    As this appeal is moot and we find no exceptions to the mootness doctrine applicable, we dismiss the appeal.

¶ 23    Appeal dismissed.